UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CAROLYN HABERMAN,

                    Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

                    Defendant.

CASE NO. 13-cv-05844 JRC

ORDER ON PLAINTIFF'S
COMPLAINT (Amended)

        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 6; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 7). This matter has been fully briefed (*see* ECF Nos.

19, 23, 26).

        After considering and reviewing the record, the Court concludes that the ALJ did

not commit harmful error when evaluating plaintiff's credibility, noting that plaintiff

failed to engage in treatment except when necessary to maintain welfare benefits; and finding that plaintiff's allegations are inconsistent with the medical evidence. Both of these findings are supported by substantial evidence in the record as a whole. Also, the Court finds that the ALJ provided germane reasons for failing to credit fully the opinions from examining lay sources, noting that they relied on plaintiff's self-reports that were not credited fully, and that they did not cite many objective findings in support of their opinions. In addition, Dr. Harmon's opinion was rejected properly as based on the lay opinions, which properly were rejected by the ALJ.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, CAROLYN HABERMAN, was born in 1983 and was 23 years old on the alleged date of disability onset of February 1, 2007 (*see* Tr. 138-39, 140-44). Plaintiff left school in the 12th grade and has her GED (Tr. 50).  She has some work experience in fast food and retail (Tr. 58-60), but has been fired for attendance issues (Tr. 50-51).

According to the ALJ, plaintiff has at least the "medically determinable impairments of: adjustment disorder with depressed mood, attention deficit hyperactivity disorder by self-reported history, and history of alcohol, cannabis and methamphetamine use (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*)" (Tr. 21).

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and

following reconsideration (*see* Tr. 72-74, 75-78, 82-83, 84-86). Plaintiff's requested

hearing was held before Administrative Law Judge Marie Palachuk ("the ALJ") on

September 13, 2011 (*see* Tr. 38-67). On October 12, 2011, the ALJ issued a written

decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social

Security Act (*see* Tr.16-37).

      In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) Whether or

not the ALJ committed reversible error by erroneously rejecting four examining medical

opinions; (2) Whether or not the ALJ committed reversible error by erroneously rejecting

Dr. Harmon's opinions; and (3) Whether or not the ALJ committed reversible error by

erroneously rejecting plaintiff's credibility (*see* ECF No. 19, p. 3). Because issue two is

dependent on plaintiff's credibility, in part, and because issue number three is dependent

on issue number two, the Court will start with a discussion regarding plaintiff's

credibility.

<u>STANDARD OF REVIEW</u>

      Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)).

//

//

//

1

<u>DISCUSSION</u>

2

(1)      **Whether or not the ALJ committed reversible error by erroneously**
**rejecting plaintiff's credibility**.

3

4

The ALJ provides the same rationale in support of her determination not to credit

5

fully plaintiff's allegations when finding that plaintiff did not have any severe

6

impairments, as when making findings, in the alternative, that plaintiff had severe

7

8

impairments but still was not disabled pursuant to the Act (*see* Tr. 28; *compare* Tr. 22-23

with Tr. 28-31). The ALJ found that plaintiff's allegations regarding her ability to

9

function and regarding her limitations were inconsistent with the objective medical

10

record, contradicted by an opinion from a medical source, inconsistent with plaintiff's

11

activities of daily living and were contradicted by plaintiff's failure to follow through

12

13

with treatment except when required to receive DSHS welfare benefits (*see* Tr. 30).

14

The ALJ's credibility determinations "must be supported by specific, cogent

15

reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v.*

16

*Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)).  In evaluating a claimant's

17

credibility, the ALJ cannot rely on general findings, but "'must specifically identify what

18

testimony is credible and what evidence undermines the claimant's complaints.'" *Greger*

19

*v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec.*

20

*Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations

21

omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted). The

22

ALJ may consider "ordinary techniques of credibility evaluation," including the

23

24

claimant's reputation for truthfulness and inconsistencies in testimony regarding

1   symptoms, and may also consider a claimant's daily activities, and "unexplained or
2   inadequately explained failure to seek treatment or to follow a prescribed course of
3   treatment." *Smolen, supra*, 80 F.3d at 1284 (citations omitted).

4          The ALJ found that plaintiff has received almost no mental health treatment, fails
5   to follow through with treatment, and consistently is discharged from services due to
6   failure to show up (*see* Tr. 23). Plaintiff complains that the ALJ's reliance on her failure
7   to follow through with treatment is improper because her failure reflects only plaintiff's
8   symptoms of her mental impairments. However, the ALJ considered this explanation and
9   instead found that plaintiff's failure to follow through with her treatment suggested that
10  plaintiff's "symptoms are not as severe as she has alleged" (*see* Tr. 31). Based on a
11  review of the record, as discussed below, the Court concludes that the ALJ's reliance is
12  proper.

13         It is not the job of the court to reweigh the evidence: If the evidence "is susceptible
14  to more than one rational interpretation," including one that supports the decision of the
15  Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*,
16  278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601).   The
17  ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694
18  F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*,
19  509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-
20  8, 1986 SSR LEXIS 15 at *22; *see also* SSR 96—7p.

21         Here, the ALJ found that plaintiff's lack of treatment was not just a symptom of
22  her mental impairment, but indicated that plaintiff's symptoms were not as severe as she

had alleged or she would have followed through with treatment (*see* Tr. 23, 31). This was not mere speculation, as the ALJ noted that plaintiff was capable of "[appearing] for psychological evaluations and intake assessments as required to obtain DSHS services" (*see* Tr. 31). The Court concludes that the ALJ's inference of plaintiff's symptoms not being as severe as alleged logically flowed from the evidence of plaintiff's consistent appearance for "psychological evaluations or mental health intake assessments as required to receive DSHS welfare benefits," yet failure to "follow through with treatment and [] consistent[] discharge from services due to failure to show up" (*see* Tr. 23). The Court also concludes that this rationale by the ALJ supports her determination to not credit fully plaintiff's allegations and testimony.

When failing to credit fully plaintiff's allegations and testimony, the ALJ also relies on a finding that plaintiff's allegations are inconsistent with the medical evidence (*see* Tr. 23; *see also* Tr. 30-31). For example, the ALJ noted that records "reflect that the claimant had no visible symptoms of depression or anxiety [in August 2010]" (*see* Tr. 23 (*citing* Tr. 455)). As indicated by the ALJ, plaintiff was evaluated as alert, oriented, coherent, stable and compliant, [with] no visible [symptoms] of depression or anxiety such as downcast appearance or sparse speech" (*see* Tr. 455). Similarly, the ALJ found that although plaintiff reported not being able to concentrate, "evaluator Jay Toews, Ed.D., opines that the claimant was well focused, and had intact concentration, attention and short-term memory during the psychological evaluation" (*see* Tr. 29 (*citing* Tr. 225)). As indicated by the ALJ, Dr. Toews included the following in his assessment:

In summary, this young lady presents with rather vague complaints about being depressed and having ADHD. She reports a successful work history, stating she left several jobs because she moved out of state. Primary factors affecting mood are loss of her children, and recent deaths of important people. Mood and affect are consistent with grief and situational problems. Her spirits improve significantly when she is able to see and interact with her children, and have improved since she is in a new relationship. She evidences no signs or symptoms of a major depressive disorder. She does have some situational mood problems.

She is cognitively intact and appears to function in the low average range of intelligence. She exhibited no signs of restlessness, agitation or distractibility. She was well focused. Attention and concentration, as well as short-term memory are intact. She does not appear to have any significant memory problems. She gave poor effort during mental status exam.

She is able to interact with people in general, is able to relate to and interact with coworkers and supervisors. She would be able to sustain attention and concentration over a full workday and workweek, and would be able to perform a wide variety of routine and repetitive types of work. She is competent to manage funds should she be found eligible for benefits.

(Tr. 225).

Based on the record as a whole, the Court concludes that the ALJ's reliance on inconsistency between plaintiff's allegations and the medical evidence is a finding based on substantial evidence in the record as a whole and concludes that such reliance supports the ALJ's credibility determination.

Although plaintiff complains that the ALJ erred when relying on plaintiff's activities of daily living in support of the credibility determination, the Court concludes that any error is harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

(*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that it has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Here, the Court concludes that the ALJ provided specific and legitimate, as well as clear and convincing, reasons when failing to credit fully plaintiff's allegations and testimony. Any error in the evaluation of plaintiff's allegations and credibility is harmless error.

(2)  **Whether or not the ALJ committed reversible error by erroneously rejecting four examining other medical opinions from lay sources**.

The ALJ gave significant weight to the opinion of Dr. Toews (*see* Tr. 26), whose opinion was discussed briefly and quoted by the Court in the context of plaintiff's credibility, *see supra*, section 1. Plaintiff complains about the ALJ's rejection of other

1    medical opinions provided by lay sources, in favor of this noted opinion by Dr. Toews. In

2    order to reject lay opinions, the ALJ must provide germane reasons.

3           The Court first notes that although plaintiff indicates that these lay opinions were

4    provided in conjunction with an acceptable medical source, Dr. M. Rodenberger, M.D.,

5    defendant responds that Dr. Rodenberger merely signed the evaluation forms completed

6    by lay sources Mr. Clark and Mr. Anderson solely as a "releasing authority signature (for

7    use by the Veterans Administration)" (*see* response, ECF No. 23, p. 15 (*citing* Tr. 351,

8    438)). Plaintiff did not reply to defendant's argument and has not directed the Court to

9    any evidence that Dr. Rodenberger examined or evaluated plaintiff (*see* Reply, ECF No.

10   26). The cited records indicate the "name of the examining professional" as Mr. Clark

11   and Mr. Anderson, just above the "releasing authority signature" of Dr. Rodenberger. The

12   Court finds defendant's argument to be persuasive (*see* Tr. 351, 438).

13          Pursuant to the relevant federal regulations, in addition to "acceptable medical

14   sources," that is, sources "who can provide evidence to establish an impairment," 20

15   C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

16   who are defined as "other non-medical sources" and "other sources" such as nurse

17   practitioners, therapists and chiropractors, who are considered other medical sources, *see*

18   20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec*., 613 F.3d 1217, 1223-

19   24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR"

20   06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion

21   evidence provided by both types of "other sources," characterized by the Ninth Circuit as

1    lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner,*

2    *supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

3         Here, the ALJ evaluated together the opinions of four examining lay sources (*see*

4    Tr. 23-26, 30). The ALJ provided six reasons for failing to credit fully these opinions

5    from lay sources (*see* Tr. 25-26). The ALJ included the following discussion in her

6    written decision:

7
8         Little weight is given to all of the above DSHS opinions for the following
          reasons: 1) evaluators based their opinions largely on the claimant's self-
9         reported symptoms and complaints which are not entirely credible, 2)
          evaluations were conducted for the purpose of determining the claimant's
10        eligibility for Washington state welfare assistance and she was likely
          aware that the continuation of state assistance was dependent upon the
11        DSHS evaluations and therefore had incentive to overstate the symptoms
          and complaints, 3) the CWCMH [Central Washington Comprehensive
12        Mental Health] counselors do not have a treating relationship with the
          claimant, nor do any of the other DSHS evaluators, 4) the evaluation
13        forms were completed by checking boxes and contained few objective
          findings supporting the degree of limitation opined (opinions rendered on
14        check-box or form reports which do not contain significant explanation of
          the bases were conclusions maybe appropriately accorded little or no
15        weight. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)), 5) DSHS
          uses different regulations to establish disability than the Social Security
16        Administration and therefore being considered disabled by DSHS
          standards does not equate to being disabled by Social Security standards,
17        and 6) evaluators are not acceptable medical sources pursuant to the
          Social Security Administration regulations.
18
19   (Tr. 25-26).

20        Some of the reasons provided by the ALJ simply determine which standard

21   applies, or explains, in part, why the ALJ is relying on the opinion from the examining

22   doctor, acceptable medical source, Dr. Toews (*see id.; see also* Tr. 26). For example, the

23   ALJ notes that the lay sources are not acceptable medical sources, a fact that both

24

ORDER ON PLAINTIFF'S COMPLAINT
(AMENDED) - 10

differentiates their opinions from the opinion of Dr. Toews, who is an acceptable medical

source; and also indicates recognition of the fact that a germane reason is required for any

rejection of their opinions.

The Court notes that the ALJ found that the lay opinions "contain few objective

findings in support of the degree of limitation opined" and that the "evaluators based their

opinions largely on the claimant's self-reported symptoms and complaints which are not

entirely credible" (*see* Tr. 25). Both of these are germane reasons for the rejection of

these lay opinions.

1.  Mr. Dick Moen, MSW

Mr. Moen examined and evaluated plaintiff in January, 2008 (*see* Tr. 291-96). In

support of his opinion regarding plaintiff's cognitive limitations, Mr. Moen indicated that

plaintiff will forget what needs to be done even if it is written down, noting plaintiff's

report in parentheses: "'I lose everything'" (*see* Tr. 293). Similarly, in support of his

analysis regarding plaintiff's social limitations, Mr. Moen indicated that plaintiff "says

she can get along with people, can interact with others in public" (*see id.*). Based on the

record as a whole, the Court concludes that the ALJ's finding that Mr. Moen relied on

plaintiff's self-report is a finding based on substantial evidence in the record as a whole.

This is a germane reason for the rejection of the opinion of Mr. Moen.

2.  Ms. Caitlin Newman, MS

Ms. Newman examined and evaluated plaintiff in April, 2008 (*see* Tr. 297-301). A

review of the record indicates that it is not clear what forms the basis of the opinions

from Ms. Newman (*see id.*). Although it is possible that her opinions regarding specific

1  functional limitations are based on plaintiff's subjective self-reports, such a finding is not

2  demonstrated by substantial evidence in the record (*see* Tr. 299). However, the ALJ also

3  found that this opinion by Ms. Newman "contained few objective findings in support of

4  the degree of limitation opined" (*see* Tr. 25). This finding is based on substantial

5  evidence in the record as a whole, as neither the notations in the section specifying

6  functional limitations, nor within the MSE results, are objective findings listed that

7  support the level of limitations found by Ms. Newman (*see* Tr. 299, 301). For example,

8  Ms. Newman opined that plaintiff suffered from severe limitations in her ability to

9  exercise judgment and make decisions, as well as in her ability to understand remember

10 and follow complex instructions (*see* Tr. 299). Although Ms. Newman indicated that

11 plaintiff had difficulty concentrating and focusing, with scattered thoughts, Ms. Newman

12 did not indicate an objective observation or basis for this opinion (*see* Tr. 299), and,

13 furthermore, a review of the mental status examination conducted by Ms. Newman does

14 not reveal the objective basis for her opinion (*see* Tr. 301). The Court concludes that the

15 ALJ offered germane reasons for failing to credit fully the lay opinion of Ms. Newman.

16

17        3.  Mr. Christopher J. Clark, M.Ed., LMHC

18        Mr. Clark examined and evaluated plaintiff in November, 2008 and July 9, 2010

19 (*see* Tr. 199-204, 346-53).

20        In November, 2008, when assessing plaintiff's limitations with respect to social

21 factors, Mr. Clark noted plaintiff's report that "other people are my doormat" (*see* Tr.

22 201). Similarly, when describing the effects of prescribed medication on plaintiff's ability

23 to perform work activities, Mr. Clark indicated that plaintiff "benefits from stimulant

24

1  therapy, by history" and that her last use was "5 years ago" (*see id.*). Subsequently in his

2  report, Mr. Clark opined that plaintiff "needs resumption of ADHD medication to

3  facilitate reliable work performance" (*see* Tr. 202). The Court concludes that the ALJ's

4  finding that Mr. Clark based his opinion largely on plaintiff's self-reported symptoms and

5  complaints which are not entirely credible is a finding based on substantial evidence in

6  the record as a whole.

7       Based on the reasons stated and the relevant record, the Court concludes that the

8  ALJ provided germane rationale for failing to credit fully the November, 2008 opinion of

9  examining lay source, Mr. Clark.

10

11      Over a year later, Mr. Clark included a medical source statement in his July, 2010

12 assessment in which he was asked to describe what plaintiff was capable of doing despite

13 her impairments (*see* Tr. 349). Mr. Clark indicated that plaintiff was "struggling with

14 basic activities of daily living and no community activities," demonstrating reliance on

15 plaintiff's self report (*see id.*). Mr. Clark also noted that plaintiff "isolates at home,"

16 indicating that she "reports out-of-home activities four times per month" (*see* Tr. 348).

17 Similarly, when indicating the basis for his GAF rating, Mr. Clark indicated that plaintiff

18 had "been unable to sustain work like behavior in several years [and] social functioning

19 has been poor for several years" (*see id.*).

20      Based on the reasons stated and the relevant record, the Court concludes that the

21 ALJ provided germane rationale for failing to credit fully the July, 2010 opinion of

22 examining lay source, Mr. Clark.

23      4.  Mr. Russell Anderson, MSW

24

1    Mr. Anderson evaluated plaintiff multiple times. For example, on June 1, 2009,

2    when rendering his opinion regarding plaintiff's limitations with social factors, Mr.

3    Anderson noted "social isolation, lack of trust in people" and that plaintiff "doesn't

4    tolerate pressure well" (*see* Tr. 207). In his August 3, 2009 assessment summary, Mr.

5    Anderson includes a litany of reports from plaintiff, including that plaintiff "reports low

6    energy, feelings of worthlessness, and sadness. She has difficulty with concentration and

7    short-term memory problems. She also experiences psychomotor agitation with anger

8    outburst, and a loss of interest in significant activities such as reading" (*see* Tr. 216). Also

9    in his assessment summary, Mr. Anderson notes as follows:

10

11         [Plaintiff] experiences recurrent intrusive thoughts of [abusive] events,
           tries to avoid talking about it or having any feelings or thinking about it.
12         She is socially isolated and detached from others, [h]as little trust in any
           one, and feels emotionally restricted and numb at times. She has
13         difficulty getting and staying asleep, gets irritable with anger outbursts,
           has problems with concentration, and is very wary of her surroundings,
14         and other people.

15    (*see id.*).

16    Similarly, on April 15, 2010, Mr. Anderson assessed that plaintiff's "concentration

17    is poor and she has short-term memory problems," and Mr. Anderson indicated that this

18    opinion was based on plaintiff's "inability to remember her scheduled appointments" (*see*

19    Tr. 254). Mr. Anderson noted that plaintiff "continues to experience agitation and anger

20    outbursts as well" (*see id.*). Mr. Anderson noted that plaintiff "continues to be socially

21    isolated and lacks trust in others" (*see id.*). Finally, the Court notes that Mr. Anderson

22    opined that plaintiff "has difficulty with concentration," (*see id.*), although his own

mental status examination results indicated that plaintiff's functioning was intact on serial 7s and serial 3s, as well as for other simple calculations (*see* Tr. 252).

When Mr. Anderson evaluated plaintiff in August, 2011, in support of his opinion that plaintiff suffered from marked limitations in her ability to communicate and perform effectively in a work setting with public contacts, he indicated plaintiff's lack of trust in others, and her social isolation (*see* Tr. 436), and when indicating the basis for his GAF rating, he indicated "no job, audio hallucinations, social isolation, poor interpersonal communication skills, poor interpersonal relationships, serious impairment in social and occupational functioning" (*see* Tr. 434).

The Court concludes that the ALJ's finding that Mr. Anderson relied largely on plaintiff's self-reported symptoms and complaints which are not entirely credible is a finding based on substantial evidence in the record as a whole. In addition, the Court also concludes that the ALJ provided germane reasons for failing to credit fully the lay opinions from Mr. Anderson.

For the stated reasons and based on the record as a whole, the Court concludes that the ALJ did not err when evaluating the opinions from the lay examining sources.

(3)     **Whether or not the ALJ committed reversible error by erroneously rejecting the opinions of Dr. Dana Harmon, M.D., non-examining physician**.

Although plaintiff complains about the ALJ's rejection of the opinion of Dr. Harmon, plaintiff fails to discuss one of the reasons given by the ALJ for rejecting this opinion. The ALJ rejected the opinion from Dr. Harmon in part because her opinion was based on a review of the DSHS opinions from the lay sources, which were rejected by the

ALJ (*see* Tr. 26). The Court already has upheld the ALJ's rejection of the opinions from the examining lay sources, *see supra*, section 2. The Court also concludes that the ALJ's finding that Dr. Harmon's opinion was rendered on the basis of these four lay opinions from examining sources is a finding based on substantial evidence in the record as a whole (*see* Tr. 314). Dr. Harmon indicated that she was approving plaintiff for general assistance because plaintiff's "psychological evaluation from CWCMH diagnoses her with a Major Depressive Disorder, PTSD, and ADHD, with a 'marked' level of overall impairment" (*see id.*).

The Court also concludes that the ALJ provides in her written decision a specific and legitimate reason for failing to credit fully the opinion of non-examining doctor, Dr. Harmon, by noting that Dr. Harmon's opinion was based on the lay examining source opinions which the ALJ was rejecting with germane rationale. Therefore, the Court finds no error in the ALJ's failure to credit fully the opinions from non-examining doctor, Dr. Harmon.

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 14th day of July, 2014.

J. Richard Creatura
United States Magistrate Judge